No. 04-753

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 265

MARCIA ANN CASTONGUAY,

        Plaintiff and Appellant,

  v.

THE ESTATE OF ANDREW LYNN POLSON,

        Defendant and Respondent.

APPEAL FROM:    The District Court of the Fourth Judicial District,
                    In and For the County of Missoula, Cause No. DV 2000-709,
                    Honorable Douglas G. Harkin, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Lon J. Dale and W. Adam Duerk, Milodragovich, Dale,
                Steinbrenner & Binney, P.C., Missoula, Montana

        For Respondent:

                Philip J. O'Connell, Attorney at Law, Missoula, Montana

Submitted on Briefs:  July 13, 2005

Decided:   October 25, 2005

Filed:

_____
                        Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1     Marcia Ann Castonguay brought a claim against Andrew Lynn Polson for actual and constructive fraud based upon perjured testimony in a prior dissolution proceeding. The District Court dismissed the case on summary judgment concluding that Castonguay had not asserted any facts that constitute extrinsic fraud as opposed to intrinsic fraud. We affirm.

¶2     We restate Castonguay's single issue:

¶3     Did Castonguay allege a cause of action for extrinsic fraud against Polson?

## BACKGROUND

¶4     This constitutes the third independent action by which these parties have come before this Court. Castonguay and Polson married in 1975 and dissolved their marriage in 1999. Both parties provided sworn testimony at the July 16, 1999, dissolution of marriage hearing. Four years into their marriage, Polson's father gave Polson and Castonguay a house. At the dissolution proceeding, Polson testified that, after his release from prison for domestic abuse, he gave the house, worth $110,000, to his sister in exchange for forgiving a $30,000 debt. At the dissolution hearing, Marcia introduced a financial statement submitted to First National Montana Bank of Missoula. Purportedly signed by Polson, the financial statement showed Polson having an ownership interest in the house and two other parcels of real property. Polson denied signing the financial statement, and the court concluded that the parties, in fact, did not own any real property.

¶5     Castonguay brought this cause of action against Polson for fraud. In essence, she argues that he testified in 1999 that he did not own any real property while, unbeknownst to

2

her and the court, he had, in 1996, submitted a financial statement to First Security Bank asserting that he did own real estate. Castonguay contends that Polson's testimony that he did not own property induced the dissolution court to award him more property than he deserved. She brought this separate cause of action asserting that Polson's conflicting statements support a cause of action for extrinsic fraud.[1]

¶6 The District Court concluded that, aside from perjury allegedly committed at the dissolution hearing (intrinsic fraud), Castonguay had not alleged any facts constituting extrinsic fraud. It thus dismissed Castonguay's complaint.

## STANDARD OF REVIEW

¶7 The decision to grant summary judgment is a matter of law that we review *de novo*. *Cole v. Valley Ice Garden, L.L.C.*, 2005 MT 115, ¶ 16, 327 Mont. 99, ¶ 16, 113 P.3d 275, ¶ 16. If the non-moving party fails to provide substantial evidence raising a genuine issue of material fact, the district court must decide whether the moving party is entitled to judgment as a matter of law. *Cole*, ¶ 16.

## DISCUSSION

¶8 Castonguay alleges that Polson, through extrinsic fraud, induced the District Court to award him a larger portion of the marital estate than that to which the law entitled him. As the United States Supreme Court noted in the case establishing the difference between intrinsic and extrinsic fraud, *United States v. Throckmorton* (1878), 98 U.S. 61, 25 L.Ed. 93,

---

[1]Polson died on June 21, 2003, and his estate was substituted as a party by the District Court on September 7, 2004.

3

[W]here the same matter has been actually tried, or [was] so in issue that it might have been tried, it is not again admissible; the party is estopped to set up such fraud, because the judgment is the highest evidence, and cannot be contradicted. It is otherwise . . . with a stranger to the judgment. . . . We think these decisions establish the doctrine on which we decide the present case; namely, that the acts for which a court of equity will on account of fraud set aside or annul a judgment or decree, between the same parties, rendered by a court of competent jurisdiction, have relation to frauds, extrinsic or collateral, to the matter tried by the first court, and not to a fraud in the matter on which the decree was rendered.

That the mischief of retrying every case in which the judgment or decree rendered on false testimony, given by perjured witnesses, or on contracts or documents whose genuineness or validity was in issue, and which are afterwards ascertained to be forged or fraudulent, would be greater, by reason of the endless nature of the strife, than any compensation arising from doing justice in individual cases.

*Throckmorton,* 98 U.S. at 68-69 (quotation marks omitted). In *Clark v. Clark* (1922), 64 Mont. 386, 389, 210 P. 93, 94, we stated:

The power of a court of equity to grant relief from a judgment obtained by fraud is inherent, and the rule relates to decrees in equity as well as to judgments at law, but not every fraud committed in the course of a judicial determination will furnish ground for such relief. The acts for which a judgment or decree may be set aside or annulled have reference only to fraud which is extrinsic or collateral to the matter tried by the court, and not to fraud in the matter on which the judgment was rendered. [Citation omitted.]

¶9 We then proceeded to address the difference between extrinsic and intrinsic fraud: "What, then, is meant by the expression 'fraud which is extrinsic or collateral to the matter tried by the court?' It is extrinsic or collateral within the meaning of the rule, when the effect of it is to prevent the unsuccessful party from having a trial or from presenting his case fully . . . ." *Clark,* 64 Mont. at 392, 210 P. at 95. We have called intrinsic fraud "fraud in the matter on which the decree is rendered." *Clark,* 64 Mont. at 390, 210 P. at 94.

4

¶10    Thus, if the matter has already been tried or was so in issue that it might have been tried, it is intrinsic. Conversely, if the court received the evidence collaterally in such a way that the court did not or could not have decided the issue, it is extrinsic. Questions whether a party committed fraud to "prevent the unsuccessful party from having a trial or from presenting his case fully," such as "keeping him away from court by false promise of compromise," are questions that the court, by definition, could not have decided–the very fraud prevented the court from considering such deceptions. *Clark*, 64 Mont. at 392, 210 P. at 95.

¶11    In arguing that Castonguay's complaint alleges intrinsic fraud, Polson points to paragraph two of the complaint which alleges: "All actions relevant to this Complaint occurred in the presence of the Honorable C.B. McNeil, sitting in Missoula County, Montana, during a non-jury trial and subsequent proceedings therein." Castonguay counters by pointing to paragraph twenty, which alleges:

> [Lynn] used his representations, as to his interests in certain real and personal property, to gain an advantage over Marcia in the distribution of their joint marital estate.
>
> Likewise, Lynn's representations concerning his interests in certain real and personal property were detrimental to Marcia's interest in an equitable distribution of marital assets.

¶12    In contending that she has alleged wrongful acts in addition to perjury, Castonguay relies on allegations in the complaint that Polson told a bank that he owned his own home, that Polson performed acts in preparation for development of real property, and that, in the dissolution proceeding, Polson claimed some of his property belonged to his son. The

5

District Court concluded that, if the allegations in Castonguay's complaint were taken as true, they constituted perjury and Montana does not recognize an independent cause of action for damages caused by perjurious testimony. Further, the court concluded that the remedy for perjured testimony in a dissolution proceeding is an award of the undisclosed asset to the opposing party and the setting aside of a judgment or part of a judgment pursuant to § 40-4-253(4) and (5), MCA.

¶13 The District Court was correct. We have repeatedly held that fraud between the parties, such as perjured testimony at trial, does not rise to the level of fraud upon the court. *See Marriage of Hopper*, 1999 MT 310, ¶ 24, 297 Mont. 225, ¶ 24, 991 P.2d 960, ¶ 24. To prove extrinsic fraud, Castonguay must establish that Polson perpetrated fraud as to an issue that the court in the dissolution proceeding did not consider. Castonguay lists three alleged facts suggesting Polson's extrinsic fraud: (1) Polson prepared real property for development; (2) Polson claimed at the dissolution proceeding that some of the property he owned actually belonged to his son; and (3) Polson signed a 1996 financial statement stating that he owned his own home but testified at the dissolution proceeding that he had given that home to his sister.

¶14 As to Polson's allegedly preparing property for development, Castonguay fails to show the significance of this. Since such preparation could be for Polson or for his family, irrespective of ownership, that fact does not amount to fraud.

¶15 The court in the dissolution proceeding had an opportunity to address the contradictions in the evidence as to ownership of property. The very purpose of the dissolution

6

proceeding was to determine the amount and type of marital property. Counsel for Castonguay cross-examined Polson to expose the clear contradictions between an earlier 1982 financial statement and his testimony. The dissolution court thus considered whether Polson owned the disputed property and whether Polson's in-court disclaimer of ownership was true.

¶16 Because the court in the dissolution proceeding already determined the veracity of Polson's statements that his sister owned the house, any fraud related to those assertions was intrinsic to that proceeding. *See Throckmorton*, 98 U.S. at 68. Similarly, in deciding how to distribute the marital property, the court in the dissolution proceeding necessarily decided whether Polson, in fact, owned the property that he claimed belonged to his relatives. Because the court decided this issue, any purported fraud is intrinsic as well. The facts alleged in Castonguay's complaint herein relate to matters which were presented to and addressed by the District Court in the dissolution matter. As the District Court concluded, the alleged facts, if taken as true, amount to perjury, intrinsic to the dissolution proceeding. Since Castonguay failed to allege any facts constituting extrinsic, as opposed to intrinsic, fraud, the District Court correctly dismissed her complaint.

¶17 Affirmed.

/S/ W. WILLIAM LEAPHART

We Concur:

7

/S/ JOHN WARNER
/S/ PATRICIA O. COTTER
/S/ JIM RICE

Justice James C. Nelson specially concurs.

¶18    I concur in the result reached in our Opinion based on the Court's analysis of extrinsic fraud. Unfortunately, Castonguay's opportunity to demonstrate--by way of a separate action, under § 40-4-253(5), MCA--that Polson actually might have committed fraud and perjury in the dissolution proceedings was already short-circuited by this Court. See, *Polson v. Polson*, 2005 MT 185, 328 Mont. 49, ___ P.3d ___. I continue to believe that Castonguay was improperly denied her day in court in that case.

/S/ JAMES C. NELSON