FILED

August 26 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0002

DA 15-0002

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2015 MT 253

DAVID L. FINN,

Plaintiff and Appellant,

v.

DAKOTA FIRE INSURANCE COMPANY,

Defendant and Appellee.

APPEAL FROM: District Court of the Seventh Judicial District,
In and For the County of Richland, Cause No. DV 13-56
Honorable Katherine M. Bidegaray, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Robert J. Savage, Savage Law Firm; Sidney, Montana

Donald L. Harris, Tucker P. Gannett, Harris & Associates, PLLC;
Billings, Montana

For Appellee:

Kathleen L. DeSoto, Garlington, Lohn & Robinson, PLLP; Missoula,
Montana

Submitted on Briefs: July 8, 2015
Decided: August 26, 2015

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 David Finn appeals the order of the Seventh Judicial District Court, Richland County, holding that he did not have insurance coverage in effect at the time he damaged his pickup truck in an accident, due to his nonpayment of a renewal premium. We affirm, addressing the following issue on appeal:

*Did the District Court err by holding that Dakota Fire properly cancelled an insurance policy for nonpayment of a renewal premium?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 Dakota Fire Insurance Company issued an insurance policy to David Finn, covering his 2007 Silverado pickup truck, effective from May 1, 2011, to May 1, 2012. On March 16, 2012, Finn received a letter from EMC Insurance Companies[1] advising him he would soon be receiving an invoice for the premium necessary to renew the policy. The letter further explained that a failure to pay the premium prior to the due date would result in a cancellation of his policy. On March 28, 2012, Finn requested that his new GMC Sierra 1500 truck be substituted on the policy, replacing the Silverado. EMC made the change to his policy as requested.

¶3 On April 11, 2012, EMC sent Finn the renewal premium invoice, which instructed him to pay the minimum amount of $131.65 by May 1, 2012, to renew his policy. Finn did not pay by the due date. Six days later, EMC sent a notice of expiration and cancellation summary to Finn, but offered to reinstate Finn's coverage without

---

[1] EMC Insurance Companies is the parent company of Dakota Fire. Because correspondence in this case came from both companies, we use the names interchangeably throughout the opinion.

2

interruption if he would pay the premium by May 18.  EMC explained that if he failed to make this payment the policy would "remain expired."  Finn wrote a check to EMC dated May 8, but it was not received in the mail by the company until May 24.  Finn states that he failed to place a stamp on the envelope, resulting in it being returned to him by the postal service, and requiring him to resend it.

¶4     On May 14—after EMC had sent the notice of expiration and before Finn's payment had arrived—Finn was involved in an automobile accident resulting in the total loss of his truck.  Two days later, Finn reported the loss to EMC.  On May 24, EMC sent a letter to Finn denying coverage for the accident, citing his failure to pay the renewal premium by the deadline.  On the same day, Finn's check arrived at EMC's office.

¶5     On May 24, 2013, Finn filed a complaint alleging breach of contract and requesting declaratory relief.  Following cross motions for summary judgment, the District Court issued findings of fact, conclusions of law, and an order granting Dakota Fire's cross motion.  The District Court determined that, had Dakota Fire received a payment of $131.65 from Finn by May 1, 2012, Finn would have successfully renewed the policy, and that, had Dakota Fire received a payment of $232.81 by May 18, 2012, Finn would have successfully reinstated his policy.  Because Finn failed to accomplish either of these, "there was no automobile insurance policy in effect at the time of Finn's May 14, 2013, accident" and Dakota Fire "had no contractual duty to indemnify" Finn for his losses.  Finn appeals.

## STANDARDS OF REVIEW

¶6 We review orders granting summary judgment de novo. *Fisher v. Swift Transp. Co.*, 2008 MT 105, ¶ 12, 342 Mont. 335, 181 P.3d 601. The interpretation of an insurance contract's terms presents a question of law, and we review a district court's legal conclusions for correctness. *Cusenbary v. United States Fid. & Guar. Co.*, 2001 MT 261, ¶ 9, 307 Mont. 238, 37 P.3d 67. The interpretation and application of a statute to a particular set of circumstances are questions of law subject to de novo review for correctness. *Ramsey v. Yellowstone Neurosurgical Assocs.*, 2005 MT 317, ¶ 18, 329 Mont. 489, 125 P.3d 1091.

## DISCUSSION

¶7 *Did the District Court err by holding that Dakota Fire properly cancelled an insurance policy for nonpayment of a renewal premium?*

¶8 Section 33-23-214(1), MCA, provides that an insurer "shall renew a motor vehicle liability policy unless it mails or delivers to the named insured . . . at least 45 days' advance notice of its intention not to renew." Section 33-23-214(3), MCA, adds that the section does not apply "where the named insured has failed to discharge when due any of the insured's obligations in connection with the payment of premiums for the policy or the renewal of the policy . . . ." The District Court concluded that Finn's policy had expired by its express terms on May 1, 2012, and that Dakota Fire had clearly informed Finn what course of action was timely required to renew his policy and, later, to reinstate coverage. Because Finn failed to accomplish these, Finn's coverage expired and "Montana's midterm cancellation statutes do not apply to this case."

4

¶9 On appeal, Finn offers several arguments. First, Finn asserts the policy's automatic termination provision, which provides that a failure to accept an offer of renewal by payment of the premium terminates the coverage, violates § 33-23-214(1), MCA, because it conditions renewal on receiving payment prior to the expiration date. Finn argues that the statute "requires auto insurers to make their decision to renew an auto policy at least 45 days before the policy expires" and thus "prohibits auto insurers from waiting until the day before the existing policy expires to decide whether to renew that policy." Accordingly, Finn offers that Dakota Fire was required to renew his policy because he was not given 45 days' advance notice of its decision not to renew, and as such the policy was not effectively cancelled until May 18, 2012—after the date his truck was damaged.

¶10 Second, Finn argues Dakota Fire's actions gave the impression the policy had been renewed, which Dakota Fire did not disavow until he reported the accident. He notes that Dakota Fire had sent him a written renewal policy, issued proof of insurance cards, and notified Finn's loss payees that the policy had been renewed, leading him, his loss payees, and law enforcement to believe a renewal policy was in effect. Finn argues that Dakota Fire invoked its automatic termination provision to "transform" the renewal of his policy into a mere offer of renewal to evade the statutory notice requirements for nonrenewal and terminate his coverage.

¶11 Alternatively, Finn argues that even if he was required to timely renew the policy to obtain coverage, he did so. Finn argues that Dakota Fire's offer to renew was made by

5

use of the billing account notice, which did "not prescribe an exclusive mode of acceptance." Finn reasons that, because no provision stated that acceptance of the renewal offer could *only* be made by a timely payment, he had the option of accepting the offer by any means within a reasonable time. In support, Finn cites *Olsen v. Johnston*, 2013 MT 25, ¶ 15, 368 Mont. 347, 301 P.3d 791, where we stated an offeree may accept an offer in any reasonable manner where an offeror has failed to prescribe an exclusive mode of acceptance. Thus, Finn asserts he successfully accepted Dakota Fire's offer by paying the premium within seven days of its due date, which is a reasonable amount of time. Because an exclusive manner of renewal was not required, Finn argues that § 33-23-214(3), MCA, does not apply, as he violated no "obligation" in connection with renewing the policy.

¶12 Lastly, Finn argues the District Court erred by accepting Dakota Fire's position that May 1 was the renewal premium payment deadline. Finn reasons that because the renewal policy itself did not state a deadline for acceptance of premiums, the May 1 deadline set forth by the invoice was not binding. Finn interprets the lack of a specific premium due date to mean that coverage was not conditioned on pre-payment, and thus, he could make payment beyond that date without losing coverage.

¶13 Dakota Fire responds that § 33-23-214(3), MCA, specifically contemplates and applies to the situation here. It argues that the statute explicitly obviates notice requirements in situations where an insured fails to pay a premium to renew his policy, stating that "an insurer cannot be in violation of this statute if it has offered to renew, and

6

the insured himself fails to avail himself of that offer by failing to pay the renewal premium." Even so, Dakota Fire points out that Finn was given notice of EMC's intent to renew on March 16, 2012—45 days preceding the date of renewal—and undisputedly failed to pay on time. Thus, alternatively, even if Dakota Fire had been bound by the 45-day statutory notice requirement for nonrenewal, it argues that its actions satisfied the statute.

¶14    As to Finn's argument that EMC did not prescribe an "exclusive mode of acceptance" of the renewal offer, Dakota Fire first notes that the argument is raised for the first time on appeal, but further answers that EMC made very clear that renewal of Finn's policy was contingent on payment by May 1 and that Finn was given prior notice twice of this due date. Another notice was given to Finn offering to reinstate the policy so long as payment was received by May 18. Again, Finn failed to make timely payment. Regarding Finn's argument that he was not required to prepay the premium to secure coverage, Dakota Fire cites the language of its automatic termination provision, which states that a failure to pay a renewal premium when due results in a rejection of the offer to renew. Because the invoice clearly stated payment was required by May 1, Dakota Fire contends coverage expired at that time and, because Finn failed to pay the premium to reinstate without a lapse in coverage, there was no policy in effect at the time of the accident.

¶15    We conclude that Finn's arguments are defeated by the plain language of the notice documents and the statute. Finn's attempt to splice the wording of § 33-23-214(3),

7

MCA, so that his obligation to pay the noticed premium here is not included within an "insured's obligations in connection with the payment of premiums for the policy or the renewal of the policy," is unavailing. Clearly, it is included, which eliminates the 45-day notice requirement for nonrenewal that is applicable in other contexts.

¶16 On March 16, EMC notified Finn of its intent to renew by sending him a renewal policy and notifying him that he would be receiving an invoice. He received the promised invoice on April 11, which again advised him to pay "at least the minimum due to avoid cancellation of coverage."[2] Finn did not pay. Dakota Fire was then entitled to cancel coverage under the terms of § 33-23-214(3), MCA, because Finn had "failed to discharge" his obligation in "connection with the payment of premiums for . . . the renewal of the policy." Six days later, notice of the cancellation of coverage was conveyed to Finn in a notice of expiration, wherein Dakota Fire unequivocally stated that the policy had expired on May 1, but that coverage would be continued without interruption if the premium due was received by "12:01 A.M. standard time on 5/18/12." Again, Finn failed to comply—payment was not received by that time and date. This was not an issue of nonrenewal, because by then the policy had already been cancelled. No link in this chain of events violated Montana law.

¶17 While it is true that Dakota Fire proceeded through this process on the assumption that Finn would renew or reinstate the policy, and therefore sent a renewed policy and

---

[2] In the March 16 notice, EMC advised Finn that "[f]ailure to pay the renewal premium amount on or before the due date stated in the invoice will result in the cancellation of your insurance policy."

notices to Finn and his loss payees, this was done as a service to Finn. Otherwise, Dakota Fire could not have effectuated renewal of the policy and provided the new policy and proof of renewal for Finn's use by the date of renewal. However, Dakota Fire included the necessary notices of nonrenewal and cancellation to effectuate termination of coverage in the event the payment was ultimately not timely made.

¶18 Affirmed.

/S/ JIM RICE

We concur:

/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ JAMES JEREMIAH SHEA