Justice Ingrid Gustafson delivered the Opinion of the Court.
***296 ¶1 Appellants Amber Norbeck and Andrew Norbeck (Norbecks) appeal the Eleventh District Court's orders granting summary ***297 judgment to the State of Montana Department of Environmental Quality (DEQ), Birk Engineering and Bret A. Birk (Birks), and Flathead County (Flathead), respectively issued December 18, 2017, December 22, 2017, and March 23, 2018. We affirm.
¶2 We restate the issue on appeal as follows:
Did the District Court err in granting DEQ, Birks, and Flathead's motions for summary judgment?
FACTUAL AND PROCEDURAL BACKGROUND
¶3 William Koenig (Koenig) was the developer of the Harvest View Subdivision (Subdivision) near Kalispell, MT. In approximately November 2005, Koenig engaged Birks to perform engineering services in connection with development of the Subdivision. Birks performed these services from July 2007 to April 2010. On April 2, 2008, the July 28, 2007 DEQ Certificate of Subdivision Plat Approval (COSA) for the Subdivision was filed in the Clerk's records. The COSA stated the public water system will be provided to the Subdivision and required completion of such within three years of the approval date. It also indicated the developer/owner of record, Koenig, to be responsible for providing a copy of the COSA to all eventual purchasers. Norbecks admit the COSA allowed purchasers to buy and build without the water system completed or having final DEQ certification. Also on April 2, 2008, as part of the final Subdivision plat, a subdivision improvement agreement (SIA) was filed in the Clerk's records. The April 2008 SIA identified necessary infrastructure improvements and reflected Koenig's bond to complete those improvements if he failed to do so. The projected cost of the on-site water supply and pump house improvements was $19,740. On December 19, 2008, another SIA between Koenig and Flathead was filed in the Clerk's records. The December 2008 SIA indicated the Subdivision water system was completed "9/2005" and again estimated the construction costs for the remaining on-site water supply and pump house improvements that still needed to be completed to be $19,740.
¶4 Norbecks purchased a lot in the Subdivision on December 29, 2008, known as 500 Harvest View Lane (Property). On December 31, 2008, Fidelity National Title Company (Fidelity) issued Norbecks a title insurance policy excepting from coverage, among other things, the April 2008 SIA. Norbecks then built their home on the Property, finishing it in January 2010. During construction Norbecks *815 experienced various issues related to the Property. By no later than November 1, 2009, Norbecks' contractor, Jesse Lee (Lee), knew there was no water to the home and the Subdivision pump house had not ***298 been completed. Upon completion of the home, Lee informed Flathead the home had no water and Koenig had not completed his SIA improvement work. He was advised to contact the County Commissioners' office and have the SIA placed on the discussion agenda. Neither Lee nor the Norbecks ever followed up on this request. The Norbecks moved into the home before the wells were connected to the Subdivision water system and lived without water for three weeks. When the wells were connected to the Subdivision water system, the Norbecks' water line broke causing flooding in and around their home. It took a week for Sandry Construction to fix this problem. Norbecks then observed Sandry Construction fixing leaks in the water mains, installing a main water line to the well house, and fixing other leaks throughout the Subdivision. Over the next several months to a year, Norbecks continued to have issues with water, both as to quality and quantity. Until their appliances began to fail, Norbecks "simply lived with the situation[,] as it was bearable and appeared to be resolving itself." On March 11, 2010, two months after the Norbecks moved into their home, they had their water tested. Montana Environmental Lab found the turbidity was "15 ? mud" indicating significant mud to be present in Norbecks' water. In the summer of 2011, Norbecks experienced additional water issues when they turned on their water for their new sprinkler system and there was no pressure to run it and they had to seek assistance from the developer to obtain water pressure for the system.
¶5 In early February 2013, Norbecks received a Notice of Violation sent by DEQ to Birks indicating DEQ required the project engineer to submit a certification letter for public water and storm water systems and that, within 90 days of installation, a complete set of as-built drawings were required. On August 15, 2013, another Notice of Violation was issued which set forth a list of water system information DEQ required Birks submit. DEQ issued another Notice of Violation on January 22, 2014, which indicated that Koenig had notified DEQ on January 17, 2014, he had retained a different engineer on the project. Koenig and DEQ then entered an Administrative Order on Consent effective June 4, 2014, which outlined various violations by Koenig, stipulated penalties, and corrective actions required. Norbecks have admitted they had constructive notice of the violations found by DEQ involving the Subdivision as they lived without water for 3 weeks and experienced flooding and ongoing water quality issues. In the summer of 2014, Norbecks decided to sell their home and were informed they could not sell their home using conventional financing due to the DEQ violation notices. On November 14, 2014, Norbecks filed suit against ***299 William Koenig, Karen Koenig, Flathead, DEQ, Birks, Fidelity, and Glacier Real Estate (Glacier). Norbecks' Complaint, in relevant part, asserted violations of § 30-14-103, MCA, the Montana Unfair Trade Practices and Consumer Protection Act (MUTPA) (Count 1); negligence (Count 2); negligent misrepresentation (Count 4); continuing nuisance (Count 5); and constructive fraud (Count 6), as well as a claim for punitive damages. With the exception of Count 3, which was directed specifically at Glacier, Norbecks' claims are pleaded generally and collectively against all Defendants.
¶6 On February 23, 2017, Glacier moved for summary judgment. Norbecks did not respond and on April 4, 2017, the District Court granted Glacier's summary judgment motion. Thereafter, Glacier moved to certify the order as final, Norbecks again did not respond and the District Court certified its order and entered final judgment against Norbecks on June 27, 2017. Norbecks sought no further relief from the final judgment in favor of Glacier.
¶7 On August 10, 2017, Fidelity filed its motion for summary judgment. Norbecks did not respond and the District Court granted Fidelity's motion on September 7, 2017. In its order the District Court found, as a matter of law, Norbecks' claims relating to violations associated with the completion of the Subdivision's water system, were known to or in the exercise of due diligence were discoverable by Norbecks no later than May 1, 2010, *816 and, as such, Norbecks' tort claims were barred by applicable statutes of limitation. Following hearing on September 19, 2017, where counsel for the Norbecks represented that he had never received the summary judgment orders regarding either Glacier or Fidelity, the District Court rescinded its order granting Fidelity's motion for summary judgment and gave Norbecks two weeks to respond to the motion.[1] Norbecks did not file a response and on October 24, 2017, the District Court certified its order granting Fidelity's motion for summary judgment as final and entered judgment in favor of Fidelity. Notice of Entry of Judgment was issued October 27, 2017. Norbecks did not appeal the Order or Judgment.
¶8 On October 5, 2017, Norbecks filed a motion to dismiss both Koenig defendants, which was granted by the District Court on October 24, 2017.
¶9 On September 15, 2017, Birks sought summary judgment asserting Norbecks' Complaint was barred by applicable statutes of ***300 limitation and barred as Birks did not owe Norbecks a legal duty of care in connection with Birks' work on the Subdivision. On December 22, 2017, the District Court granted Birks' motion for summary judgment finding Norbecks' claims accrued no later than May 1, 2010, and were therefore barred by applicable statutes of limitation. The District Court did not address Birks' argument regarding duty.
¶10 On September 28, 2017, DEQ filed its motion for summary judgment asserting DEQ could not be held liable for MUTPA, constructive fraud, or punitive damage claims and that the statute of limitations had run on all tort claims. Norbecks responded on October 23, 2017, conceding their MUTPA, constructive fraud, and punitive damage claims against DEQ and asserting the statute of limitations on their tort claims should be tolled. On November 3, 2017, DEQ filed its reply in which it argued the law of the case precluded Norbecks from asserting the statute of limitations began to run on a different date than that already determined by the Court, the discovery rule was not applicable as Norbecks had sufficient notice of the water system issues to trigger their duty to conduct a reasonable inquiry, and their own admissions precluded tolling. On December 19, 2017, the District Court granted DEQ's motion for summary judgment. DEQ moved to certify the order on December 28, 2017, and on January 23, 2018, the District Court granted the motion and entered final judgment against Norbecks.
¶11 On January 19, 2018, Flathead filed its motion for summary judgment also asserting it could not be held liable for MUTPA, constructive fraud, or punitive damage claims and that the statute of limitations had run on all tort claims. On February 12, 2018, Norbecks responded conceding summary judgment was appropriate on their MUTPA, constructive fraud, and punitive damage claims and asserting the statute of limitations did not begin to run on their remaining claims until they discovered DEQ's involvement in the Subdivision review. On March 1, 2018, Flathead replied asserting the law of the case precluded Norbecks from arguing the statute of limitations began to run on a different date than that already determined by the District Court and the discovery rule did not apply as Norbecks had ample notice of water system issues to require their further investigation. On March 23, 2018, the District Court granted Flathead's motion for summary judgment. Norbecks now appeal the District Court's summary judgment orders regarding DEQ, Birks, and Flathead.
STANDARD OF REVIEW
¶12 We conduct a de novo review of a district court's ruling on ***301 motions for summary judgment, using the same M. R. Civ. P. 56 criteria as the district court. Chapman v. Maxwell , 2014 MT 35, ¶ 7, 374 Mont. 12, 322 P.3d 1029. "[O]ur de novo standard of review of summary judgment decisions allows us to review the record and make our own determinations regarding the existence of disputed issues of fact and entitlement to judgment as a matter of law." *817 Wurl v. Polson Sch. Dist. No. 23 , 2006 MT 8, ¶ 29, 330 Mont. 282, 127 P.3d 436.
¶13 We review a district court's interpretation and application of a statute to a particular set of circumstances for correctness. Finn v. Dakota Fire Ins. Co. , 2015 MT 253, ¶ 6, 380 Mont. 481, 356 P.3d 13.
DISCUSSION
¶14 Did the District Court err in granting DEQ, Birks, and Flathead's motions for summary judgment?
¶15 DEQ, Birks, and Flathead assert Norbecks' claims are barred by applicable statutes of limitation, the discovery rule is inapplicable to toll the start of the limitation periods as the Norbecks were aware of water system problems of the Subdivision that would prompt a reasonable person to conduct further inquiry, and Norbecks are precluded from asserting the limitation periods began to run as of a different date than that already determined by the District Court.
¶16 Norbecks counter they are suing for "damages that happened in the summer of 2014 when they decided to sell their house and found out that conventional financing could not be obtained because of DEQ Notices of Violation" and that they were "unaware of this issue until DEQ issued Notices of Violation on February 4, 2013 and August 15, 2013." They contend that until 2014 when they attempted to sell their home, they were not damaged by the underlying violations of Birks or the inactions of Flathead and DEQ.
¶17 A claim for violation of MUTPA is subject to a two-year statute of limitations. Osterman v. Sears , 2003 MT 327, ¶ 24, 318 Mont. 342, 80 P.3d 435. A claim of negligence or negligent misrepresentation is subject to a three-year statute of limitations. Section 27-2-204(1), MCA. A nuisance claim is generally subject to a two-year statute of limitations, but since the District Court found Norbecks' nuisance claim was based on a negligent act, the applicable statute of limitations is that of negligence-three years. See § 27-2-207, MCA ; § 27-2-204, MCA. A claim of fraud-actual or constructive-is subject to a two-year statute of limitations. Section 27-2-203, MCA.
¶18 A claim accrues and the limitations period begins to run "when all elements of the claim or cause exist." Section 27-2-102(1)(a), MCA.
***302 Lack of knowledge of a claim does not postpone the beginning of the period of limitation. Section 27-2-102(2), MCA. The fact a party does not know he or she has a claim, either because he or she is unaware of the facts or unaware of his or her legal rights is insufficient to delay the commencement of the limitations period. Christian v. Atl. Richfield Co. , 2015 MT 255, ¶ 61, 380 Mont. 495, 358 P.3d 131 ; State ex rel. Egeland v. Cut Bank , 245 Mont. 484, 488, 803 P.2d 609, 611-12 (1990). A claim not filed within the applicable statute of limitations is generally barred. Pederson v. Rocky Mountain Bank , 2012 MT 48, ¶ 9, 364 Mont. 258, 272 P.3d 663 (internal citation omitted).
¶19 The discovery rule provides an exception to this general rule. Under the discovery rule, the period of limitation does not begin to run until the injured party discovers the facts constituting the claim or, in the exercise of due diligence, should have discovered the facts constituting the claim if the facts constituting the claim are by their nature concealed or self-concealing or a defendant has taken action preventing plaintiff from discovering the facts. Section 27-2-102(3), MCA ; Draggin' Y Cattle Co. v. Addink , 2013 MT 319, ¶ 21, 372 Mont. 334, 312 P.3d 451. Despite this, for a claim to accrue, the injured party does not need to have actual or complete knowledge of the facts constituting the claim. Christian , ¶ 61. Even if the facts constituting the claim are otherwise self-concealing, if the injured party has received notice of a possible claim and failed to act diligently in pursuing the claim, the claim may be time-barred. Christian , ¶ 64. Pursuant to § 70-21-302(1), MCA, "[e]very conveyance of real property acknowledged or proved and certified and recorded as prescribed by law, from the time it is filed with the county clerk for record, is constructive notice of the contents thereof to subsequent purchasers and mortgagees." "Conveyance" includes "every instrument in writing by which any estate or interest in real property is created, aliened, mortgaged, or encumbered or by which the title to real property *818 may be affected, except wills." Section 70-21-301, MCA.
¶20 The District Court determined the facts constituting Norbecks' claims were discovered or, in the exercise of reasonable diligence, should have been discovered by Norbecks no later than May 1, 2010. From our review of the record, the undisputed facts support the District Court's finding that Norbecks claims accrued no later than May 1, 2010. Despite Norbecks' arguments to the contrary, Norbecks admit the facts constituting their claims were discovered or, in the exercise of reasonable diligence should have been discovered by them no later than May 1, 2010. Norbecks admit the April 2008 COSA allowed purchasers to buy and build without the water system ***303 completed or having final DEQ certification. On December 31, 2008, Fidelity issued Norbecks a title insurance policy excepting from coverage, among other things, the April 2008 SIA. Norbecks had constructive notice of the contents of the 2008 COSA and April 2008 SIA indicating the Subdivision water system was not complete and delineating what needed to be done by Koenig to satisfy the SIA. On December 19, 2008, another SIA was filed in the Clerk's records indicating the same water system deficiencies delineated in the April 2008 SIA. Norbecks knew they did not have water to their home during its construction. By January 15, 2010, when their builder Lee informed Flathead the developer had not completed his SIA work, Norbecks were notified the SIA for the Subdivision had not been met and that they needed to request the water system issue be placed on the County Commissioners' agenda for discussion. The Norbecks moved into the home before the wells were connected to the Subdivision water system and lived without water for three weeks. When the wells were eventually connected to the Subdivision water system, the Norbecks' water line broke and caused flooding in and around their home. It took a week for the Norbecks' water line to be fixed, after which they observed Sandry Construction fixing leaks in the water mains, installing a main water line to the well house, and fixing other leaks throughout the Subdivision. Until their appliances began to fail, Norbecks "simply lived with the situation, as it was bearable and appeared to be resolving itself." On March 11, 2010, two months after the Norbecks moved into their home, they had their water tested and discovered mud in their water. Over the next several months, Norbecks continued to have issues with both the quality and quantity of their water. From these undisputed facts, it is clear Norbecks had actual notice by at least May 1, 2010, that the Subdivision's water system was not completed and additional improvements were required to fulfill the 2008 SIAs. These undisputed facts also support the District Court's finding that Norbecks had constructive notice of the contents of the 2008 COSA and the 2008 SIAs prior to May 1, 2010, putting them on notice to make reasonable inquiry.
¶21 Norbecks now argue on appeal that despite their lack of water, their home flooding and their ongoing problems with both the quality and quantity of their water occurring prior to May 1, 2010, the District Court erred in dismissing their claims because "they were not damaged by the underlying violations of Defendants Birk or the inactions of the DEQ and Flathead County" until 2014 when they attempted to sell their home such that the statute of limitations did not began to run until the summer of 2014 when they discovered their alleged inability ***304 to sell their home using conventional financing.
¶22 Flathead and DEQ assert this argument should not be considered as it is a new theory on appeal-"a wholesale departure from the arguments Norbecks raised before the District Court" where they argued "the statute of limitations relative to DEQ could not have started prior to November 2012 or February 2013." Norbecks contend they argued "to the Court, and again argue to this Court, that until 2014, when they attempted to sell their home, they were not damaged by the underlying violations of Defendants Birk or the inaction of the DEQ and Flathead County." Norbecks argued to the District Court that they were not aware that the SIAs and COSA on the Subdivision were not complete until August 2013, and they were not familiar with the interplay of COSAs and SIAs. They contended the SIAs and COSA were self-concealing and their complexity precluded setting the accrual date of their claims prior to the DEQ violation notices.
*819 They also asserted there were no damages present for their inability to sell their home until DEQ issued its violation notices. From these arguments to the District Court, we conclude Norbecks sufficiently preserved their accrual argument that the District Court erred in applying the discovery rule to delay the commencement of the applicable statutes of limitation periods. Despite preserving this issue for appeal, we conclude the District Court did not err in determining the date on which Norbecks' claims accrued.
¶23 Norbecks fail to set forth any evidence that the facts constituting their claims were concealed in any way or that DEQ, Birks, or Flathead acted in any manner to prevent Norbecks from discovering the facts constituting their claims. As outlined above, Norbecks had actual knowledge of deficiencies in the water system serving their home in 2009, 2010, and beyond. As of April 2008, both the COSA and 2008 SIAs were on record with the Flathead County Clerk and Recorder's Office. Both documents, of which Norbecks had constructive notice pursuant to § 70-21-302(1), MCA, provided information that the Subdivision's water system needed to be completed by a date certain, a date which passed without completion. Further, the 2008 SIA specifically excepted in Norbecks' title insurance policy outlined the outstanding work to be performed including over $19,000 of work on the Subdivision water system. Norbecks argue they should be excused from conducting a reasonable inquiry because the complexity of the COSA and SIAs were such that only business people involved in the daily transactions of them could understand them. This assertion is disingenuous considering Norbecks' admission that they were able to learn a lot about the SIAs and COSA in late 2012 and 2013. Norbecks ***305 had sufficient actual and constructive notice of the issues with the Subdivision water system in early 2010 to trigger their duty to conduct a reasonable inquiry. Norbecks did not conduct a reasonable inquiry and admittedly chose just to live with the situation.
¶24 It is "not necessary to know the total extent of damages that an act causes to begin the running of the statute of limitations." E.W. v. D.C.H. , 231 Mont. 481, 487, 754 P.2d 817, 820 (1988) (citation omitted); see Bergin v. Temple , 111 Mont. 539, 548, 111 P.2d 286, 290 (1941) (cause of action exists when plaintiff's rights are infringed). "[T]here is no Montana precedent for utilizing the discovery doctrine to toll the statute of limitations beyond discovery of the cause of an injury." E.W. , 231 Mont. at 486, 754 P.2d at 820 (citation omitted). Norbecks knew, through their contractor Lee, as early as November 2009 the Subdivision water system was incomplete. When they moved into their house in early 2010, they lacked water for a few weeks. When the water was finally connected to the Subdivision wells, their waterline broke and they experienced extensive flooding. Noticing problems with their appliances, they had their water tested and learned there was mud in the water. Thereafter, they continued to experience ongoing water problems as to both quality and quantity. Rather than investigate further, they chose to just live with it. In 2009, 2010, and 2011, Norbecks suffered actual damages as a result of the incomplete Subdivision water system and it was not necessary for them to suffer more damage[2] for their claims to accrue. The District Court properly concluded the fact the Subdivision water system was not complete was known to or, in the exercise of due diligence, was discoverable by the Norbecks no later than May 1, 2010. The fact that the extent of their damages-including the inability to sell their home using conventional financing-was not yet fully known did not preclude accrual of their claims prior to May 1, 2010, as concluded by the District Court.
¶25 Norbecks assert "the District Court did not correctly apply Montana case law relative to the 'law of the case.' " On September 7, 2017, the District Court granted Fidelity's motion for summary judgment. In that Order the District Court found, that with the exception of the allegations of Count 3 of Norbecks' Complaint relating specifically to Glacier, Norbecks' claims are pleaded generally and collectively to all Defendants. The District Court found the Norbecks'
***306 claims *820 against each Defendant are predicated upon the issues with the subdivision water system cited by DEQ in its Notices of Violation, i.e. the Subdivision water system was not complete. In their Complaint, Norbecks allege the collective Defendants concealed materially adverse facts that were known to all of them. This allegation is incorporated by reference into each of the Norbecks' claims for relief. In its Order granting Fidelity summary judgment, the District Court concluded "the fact the Subdivision water system was not complete was known to, or in the exercise of due diligence, was discoverable by the Norbecks no later than May 01, 2010." The District Court further concluded that on May 1, 2010, the statute of limitations on the Norbecks' claims against Fidelity began to run. Thereafter, in the summary judgment orders appealed from herein, the District Court held that because the Norbecks had the opportunity to appeal its September 7, 2017 order granting Fidelity summary judgment but did not do so, "it is the law of this case that the fact the Subdivision water system was not complete was known to, or in the exercise of due diligence, was discoverable by the Norbecks no later than May 01, 2010."
¶26 The "law of the case" posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case. Arizona v. California , 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983). It refers to instances where rulings made at a stage in litigation that are not appealed from when the opportunity to do so exists, become "the law of the case for the future course of that litigation and the party that does not appeal is deemed to have waived the right to attack that decision at future points in the same litigation." McCormick v. Brevig , 2007 MT 195, ¶ 38, 338 Mont. 370, 169 P.3d 352 (citations omitted). Norbecks contend that the law of the case doctrine applies only to the same issue between the same parties in the same case, asserting that the District Court's orders on summary judgment with regard to Glacier and Fidelity are only the law of the case with regard to Glacier and Fidelity, not with regard to DEQ, Birks, or Flathead. Further, Norbecks assert the Glacier and Fidelity summary judgment orders were not provided to them due to a mailing error in the Flathead County Clerk's Office.
¶27 DEQ, Birks, and Flathead contend the District Court did not erroneously apply the law of the case doctrine. Norbecks pleaded their claims generally against all named Defendants such that the District Court's determination with respect to the date the Norbecks' claims accrued applied to all Defendants. Once the District Court made its determination and the time for appeal expired, the accrual date determined by the District Court-no later than May 1, 2010-became ***307 the law of the case. The District Court granted Glacier's and Fidelity's respective motions for summary judgment, certified both orders, and entered final judgments. Norbecks did not appeal either order. As such, DEQ, Birks, and Flathead contend Norbecks waived their right to dispute that their claims accrued later than May 1, 2010. We agree.
¶28 We conclude the District Court did not incorrectly apply the law of the case doctrine. The purpose of the law of the case doctrine promotes finality and efficiency of the judicial process and protects against disturbing resolved issues. Christianson v. Colt Indus. Operating Corp ., 486 U.S. 800, 815-16, 108 S.Ct. 2166, 2177, 100 L.Ed.2d 811 (1988). Although the decisions cited by Norbecks[3] reference that the doctrine applies to the same parties, those cases did not involve multiple plaintiffs or defendants such that the prior determination by their nature involved the same parties. None of the case law cited by Norbecks limits the law of the case doctrine to the same parties in a fact pattern such as that present here. Where claims are pleaded generally against all defendants, as is the case here, the legal determinations regarding those claims made by the court during the litigation are applicable to all the parties to the litigation. When a court decides on a rule of law, as the District Court did in determining the accrual date of Norbecks' claims, that decision should appropriately continue to govern the same issues in subsequent stages of the same case.
*821 ¶29 Norbecks' assertion they should not be bound by the court's legal determination as to the date of accrual of their claims contained in the District Court's orders granting summary judgment in favor of Glacier and Fidelity is unavailing for two reasons. First, Norbecks assert they did not appeal as they agreed with the orders. Second, Norbecks' argument ignores that they were provided opportunity to review the basis of the District Court's orders granting summary judgment to Glacier and Fidelity. During hearing on September 19, 2017, Norbecks' counsel was given opportunity to review the basis of the summary judgment orders. Norbecks specifically did not challenge the order granting Glacier summary judgment but requested additional time to review and respond to the Fidelity order. The District Court then rescinded the order granting Fidelity summary judgment and granted Norbecks an additional two weeks to respond. Norbecks then did not respond and on October 24, 2017, the District Court certified its order ***308 granting Fidelity's motion for summary judgment as final and entered judgment in favor of Fidelity. Notice of Entry of Judgment was issued October 27, 2017. Norbecks did not appeal the Order or Judgment. In sum, the legal issue involved here was the accrual date of the Norbecks' claims. The Norbecks pleaded their claims generally against all Defendants. Thus, the District Court's determination that Norbecks' claims accrued no later than May 1, 2010, became the law of the case and applied equally to all Defendants. As such, the District Court correctly applied the law of the case doctrine to conclude that all of Norbecks' remaining claims[4] were barred as they were not commenced within the applicable statutes of limitation and granted DEQ, Birks, and Flathead summary judgment.
CONCLUSION
¶30 The District Court did not err in granting Defendants DEQ, Birks, and Flathead's motions for summary judgment.
¶31 Affirmed.
We concur:
MIKE McGRATH, C.J.
LAURIE McKINNON, J.
BETH BAKER, J.
DIRK M. SANDEFUR, J.

The Norbecks did not request an opportunity to respond to the order granting summary judgment to Glacier, as they agreed with it.

Such as that their home would not qualify for a conventional mortgage, thus impairing their ability to sell it.

Scott v. Scott , 283 Mont. 169, 939 P.2d 998 (1997), State v. Gilder , 2001 MT 121, 305 Mont. 362, 28 P.3d 488, and State v. Black , 245 Mont. 39, 798 P.2d 530 (1990).

Norbecks conceded their MUTPA and punitive damage claims leaving only their remaining tort claims.