FILED

07/13/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0541

DA 20-0541

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2021 MT 175

IN RE THE MARRIAGE OF:

BRADLEY D. FULLER,

        Petitioner and Appellant,

    and

MELISSA L. FULLER,

        Respondent and Appellee.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DR 16-0219
Honorable Michael G. Moses, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        Mark D. Parker, Parker, Heitz & Cosgrove, PLLC, Billings, Montana

        For Appellee:

        Shannon R. Foley, Jason Armstrong, Cromwell Law, PLLC, Bozeman, Montana

Submitted on Briefs:  May 5, 2021

Decided:  July 13, 2021

Filed:

_____
                  Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Bradley Dean Fuller appeals a Thirteenth Judicial District Court order granting relief to Melissa Lynn Fuller from the 2016 final decree of dissolution of their marriage. The District Court held that Bradley and Melissa's failure to disclose their jointly owned business to the court, which they separately determined they would settle after the divorce, violated the law requiring full disclosure of assets, debts, income, and expenses. Because the court did not know about or consider the value of the businesses at the time it entered the decree, the court concluded that the decree must be reconsidered. We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 Melissa and Bradley were married in 2003. Melissa, a nurse practitioner, and Bradley, a physician, formed Fuller Family Medicine, PC ("FFM"), a medical practice, in 2011. They created at the same time B&M Investment Properties, LLC ("B&M"), to hold the parties' real property. The parties operated these businesses together, individually establishing their own clientele and practices.

¶3 The parties separated in January 2016 and, both representing themselves, filed for dissolution a month later. Along with their dissolution petition, they filed their Final Declarations of Disclosure of Assets, Debts, Income, and Expenses ("Final Disclosures") and a joint parenting plan for their two minor children. Bradley disclosed the marital home, two vehicles, a boat, and other miscellaneous items. Melissa did not disclose any additional property. Neither party disclosed FFM or B&M. The District Court entered the Final Decree of Dissolution in April 2016. The decree did not include any mention of FFM or B&M.

2

¶4    After their dissolution, the parties continued to operate FFM and B&M in the same manner as they had while married. In April 2020, however, Melissa sought to transition out of FFM to focus on her separate clinic. She requested from Bradley an equitable buyout from her jointly owned interest in FFM. Bradley declined, asserting that he was FFM's sole owner. He denied Melissa access to the company finances, property, accounts, and account information. Bradley also halved Melissa's salary, alleging she violated her FFM employment agreement's non-compete clause, leading Melissa to file complaints with the Department of Labor.

¶5    In July 2020, Melissa filed two motions with the District Court: an Emergency Motion for Temporary Restraining Order, Preliminary Injunction, and Request for Show Cause Hearing and a M. R. Civ. P. 60(b) motion for relief from the dissolution decree. Melissa alleged in these motions that Bradley had committed fraud. She claimed that, at the time of the dissolution, she and Bradley believed that FFM was a jointly and equally owned asset, created with joint marital assets and funded equally by each of them. Melissa sought temporary injunctive relief requiring Bradley to continue paying her full salary and to maintain the status quo regarding FFM and B&M while the court considered her claim for relief. She requested that the District Court set aside the final dissolution decree and adjudicate the equitable distribution of the parties' financial interests in FFM. She further requested modification of the child support agreement, arguing that she stipulated to no child support payments based on her understanding that she and Bradley jointly owned FFM.

¶6     The District Court held a hearing on October 5, 2020. Both parties testified that they had discussed the businesses at the time of the dissolution proceedings and decided to intentionally omit them from the Final Disclosures because they planned for the businesses to remain unchanged after the dissolution. Melissa said she knew that all the assets the parties were dividing were on an Excel spreadsheet and that "when [the businesses] sold or when somebody leaves, [the parties] could deal with it at that point." Melissa also stated that she knew only Bradley's name was listed on FFM's incorporation documents.

¶7     At the conclusion of the hearing, the District Court denied Melissa's motion to modify custody, for injunction, and for payment of wages, deferring the latter to the Department of Labor. The District Court found additionally that Bradley had not committed fraud. The court then explained:

> But we have a clear problem here where the parties actually did not understand, neither one of them understood the consequences of the [c]ourt being unable to address that [sic] equities of this property disposition in 2016 when presented to me. This one that came on default law and motion morning in front of this [c]ourt.
>
> We do them a lot. Everybody is on the same page. But I had no clue that there was a medical business and an investment business on the outside. . .
>
> But, man, we were all suffering under mistake of fact and mistake of law because I was unable to address the *Funk*[1] issues in this particular matter[.]
>
> .  .  .
>
> The problem with the business is that indeed as a professional corporation, Dr. Fuller is 100 percent owner of that professional corporation. And the

[1] *In re Marriage of Funk*, 2012 MT 14, ¶ 19, 363 Mont. 352, 270 P.3d 39 (requiring the trial court to consider "all assets, including pre-acquired property and assets acquired by gift, bequest, devise or descent[,]" in determining equitable apportionment of a marital estate).

only way for the [c]ourt to figure out how to equitably divide that property is to take into consideration the other assets that the parties have.

¶8 The District Court ordered briefing on whether there were other remedies available that would allow it to reconsider the equitable distribution of the marital assets. Melissa's brief argued, for the first time, that the District Court should grant relief based on the property allocation being unconscionable or ambiguous.

¶9 On November 4, 2020, the District Court issued an order declining to rule on Melissa's M. R. Civ. P. 60(b) motion, noting that it "need not decide on the Rule 60(b) Relief for Judgment motion at this time." It instead granted Melissa's requested relief by raising *sua sponte* the issue of mutual perjury under § 40-4-253(5), MCA. Part of the statutes governing marriage dissolution, that section provides: "In addition to any other civil or criminal remedy available under law for the commission of perjury, the court may set aside the judgment, or part of the judgment, if the court discovers, within 5 years from the date of entry of judgment, that a party has committed perjury in the final declaration of disclosure." The court concluded that under this section, "[s]ignificant nondisclosures in final declarations of marital assets are conditions that justify the [c]ourt to reopen the Final Decree." It found the omissions significant because they left the court "unequipped to equitably apportion the marital property in 2016[.]"

## STANDARDS OF REVIEW

¶10 We review a district court's conclusions of law de novo and its findings of fact for clear error. *Rausch v. Hogan*, 2001 MT 123, ¶ 11, 305 Mont. 382, 28 P.3d 460 (citations omitted). A court's interpretation or application of a statute is a question of law we review

5

for correctness. *Finn v. Dakota Fire Ins. Co.*, 2015 MT 253, ¶ 6, 380 Mont. 481, 356 P.3d 13 (citation omitted).

## DISCUSSION

¶11 Courts have the power and the duty to apportion marital estates equitably under the circumstances of each case. *See In re Marriage of Funk*, 2012 MT 14, ¶¶ 6, 19, 363 Mont. 352, 270 P.3d 39 (citing § 40-4-202, MCA, which vests the court with an obligation and the "broad discretion to apportion the marital estate in a manner equitable to each party under the circumstances"). To ensure equitable apportionment, "parties must completely disclose money and assets accumulated during the marriage." *In re Marriage of McFarland*, 240 Mont. 209, 213, 783 P.2d 409, 411 (1989). To assist the court in making an equitable apportionment of the property, parties must provide "competent evidence . . . on the values of the property." *Marriage of Funk*, ¶ 7 (citation omitted).

¶12 When parties are informed of the assets and liabilities of a marriage, there is good cause to enter the final dissolution decree. *See* § 40-4-254, MCA; *In re Marriage of Anderson*, 2013 MT 238, ¶¶ 23–27, 371 Mont. 321, 307 P.3d 313 (agreeing that property settlement agreement was valid without a final disclosure of assets because wife was familiar with all marital property and its approximate value). Once a court enters a final decree, neither the court nor the parties may retry the marital equities. *In re Marriage of Waters*, 223 Mont. 183, 186, 724 P.2d 726, 729 (1986) ("There must be some point at which litigation ends and the respective rights between the parties are forever established. Under ordinary circumstances, once this point is reached a party will not be

6

allowed to disturb that judgment."); *Rausch*, ¶¶ 16–17; *see* § 40-4-202, MCA (providing that the dissolution proceeding is where the court shall "finally equitably apportion between the parties the property and assets"); § 40-4-134, MCA (providing that the entry of judgment is the "final adjudication of the rights and obligations of the parties").

¶13   Courts may reopen a judgment only in narrow circumstances. "[P]erjury in the final declaration of disclosure" is one such circumstance. Section 40-4-253(5), MCA (providing that the remedy for perjured testimony is to set aside the judgment or part of the judgment). The District Court held in this case that Bradley and Melissa's intentional omission of FFM and B&M in the Final Disclosures justified reopening the decree because it could not "consider[] *all* the marital assets for equitable distribution as required by *Funk*." (Emphasis original.)   The District Court concluded that the omission was obviously intentional where the final disclosure form explicitly warned the parties that complete disclosures must be made and that "[a]ny deliberately false statement . . . may subject you to the penalty of perjury or other appropriate relief and may be considered fraud upon the Court."[2] The court reasoned that, because the omissions were intentional and significant, they constituted perjury under § 40-4-253(5), MCA.

---

[2] The District Court cited and relied on this Court's reasoning in *Castonguay v. Estate of Polson*, 2005 MT 265, 329 Mont. 103, 122 P.3d 1208. In *Castonguay*, ¶¶ 1, 5, the wife brought an action for actual and constructive fraud based upon the husband's allegedly false testimony in the parties' prior dissolution proceeding that he did not own real property. We upheld the dismissal of her claim, reasoning in part that "the remedy for perjured testimony in a dissolution proceeding is an award of the undisclosed asset to the opposing party and the setting aside of a judgment or part of a judgment pursuant to § 40-4-253(4) and (5), MCA." *Castonguay*, ¶ 12. Here, in contrast, Melissa makes no allegation that she was unaware of Bradley's property interests at the time the disclosures were submitted, nor does she challenge the District Court's finding that he did not act fraudulently in the disclosures he submitted to the court.

¶14 Bradley argues that the District Court erred in concluding that § 40-4-253(5), MCA, applies in the circumstances of this case. He contends that Montana's disclosure statutes "are not designed to procure a rehearing for a party fully informed of the asset" and that the omissions in this case did not constitute perjury. Citing *In re Marriage of Caras*, 2012 MT 25, ¶¶ 20–22, 364 Mont. 32, 270 P.3d 48—in which this Court upheld a final dissolution decree where the wife did not claim any prejudice from the lack of a final disclosure and had agreed to the husband's valuations—he argues that a party must show that she was "deceived" in order to reopen a dissolution decree. Bradley additionally argues that the District Court erred when it reopened the final decree to enforce its equitable duty to apportion marital assets. He contends that, under *Rausch*, "[t]he [c]ourt has no power to take property once owned in the marital estate and apply the equitable concepts we apply in dissolution matters to subsequent squabbles over the property between ex-spouses."

¶15 We read language in the context of the statutory scheme as a whole to give effect to its purpose. Sections 1-2-101, -102, MCA. The District Court reasoned that the purpose of the disclosures "is to provide the [c]ourt with a [sic] competent evidence to paint a complete picture of the marital assets to make an equitable apportion." But the purpose behind the disclosure statutes is to promote fairness between the parties by ensuring that each has complete knowledge of marital assets; it is not to prevent parties from amicably determining between themselves how their property should be divided. *See Miller v. Miller*, 189 Mont. 356, 362–63, 616 P.2d 313, 318 (1980) ("The rule is well reasoned that persons must be able to separate amicably and divide their property without

8

interference where such division is feasible. It is not the province of this Court to alter decisions and agreements made between husband and wife in the absence of compelling injustice."); S.B. 16 Preamble, 55th Leg., Reg. Sess., vol. II, ch. 326 (Mont. 1997) (explaining that "sound public policy further favors the reduction of the adversarial nature of marital dissolution and the attendant costs by fostering full disclosure and cooperative discovery"). *See also* § 40-4-253(1)(a), MCA (requiring disclosure of assets only to the other party, not to the court); § 40-4-252(2), MCA (preliminary disclosures "may not be filed with the court, except on the court's order"); § 40-4-254, MCA (requiring filing of the certificate of service for the final declaration of assets, not the declaration itself).

¶16    The Legislature's provision for separation agreements further demonstrates this purpose. *See* § 40-4-201(1), MCA (allowing written separation agreements that, among other things, provide for disposition of the parties' property, "[t]o promote amicable settlement of disputes between parties to a marriage attendant upon their separation or the dissolution of their marriage"). Such agreements are binding on a court "unless it finds, after considering the economic circumstances of the parties and any other relevant evidence produced by the parties, on their own motion or on request of the court, that the separation agreement is unconscionable." Section 40-4-201(2), MCA; *see Tanascu v. Tanascu*, 2014 MT 293, ¶ 15, 377 Mont. 1, 338 P.3d 47 ("when the parties enter a property division settlement in a marriage dissolution the district court is not required to identify and ascertain the value of marital assets"); *Miller*, 189 Mont. at 362, 616 P.2d at 317 (noting that the "presence of a valid separation agreement" negates the trial court's obligation to determine parties' net worth).

9

¶17 We agree with Bradley that the District Court erred when it found the parties' mutual decision to not disclose FFM or B&M to be perjury that demanded reopening the dissolution decree under § 40-4-253(5), MCA. Melissa made no showing that either party had knowingly made a false statement to the other party warranting relief under § 40-4-253(5), MCA. *See Polson v. Polson*, 2005 MT 185, ¶¶ 10-11, 328 Mont. 49, 121 P.3d 1004 (concluding that the wife had not shown the husband committed perjury under § 40-4-253(5), MCA, where she presented no admissible facts demonstrating he had intentionally excluded certain property from his financial disclosures). The disclosure form's warning to the parties was insufficient to show the omission rose to the level of perjury requiring application of § 40-4-253(5), MCA, when both parties were fully aware of the businesses. *See Marriage of Caras*, ¶ 22. Bradley and Melissa do not dispute that, at the time they made their final disclosures, neither "contended that the marital estate ha[d] an interest" in their businesses. Section 40-4-253(2)(b), MCA.

¶18 As Bradley notes, our reading of § 40-4-253(5), MCA, effectuates Montana law recognizing the finality of judgments. In *Rausch*, ¶¶ 5–6, 9, the parties retained joint ownership over a cabin in their property settlement agreement, but when the wife sued for partition without regard to marital contributions, the husband argued he should be awarded the cabin based on the fairness principles courts use in dissolution cases. This Court held that under the doctrine of collateral estoppel the issue of fairness could not be relitigated because the parties had the opportunity to address that question prior to the entry of the final decree. *Rausch*, ¶ 18. Although the District Court in the present case was unaware of FFM and B&M, the facts here present a similar scenario: both parties knew and agreed

10

that the property would be unaffected by the dissolution. *Rausch*, ¶ 18. Melissa testified that she made the decision not to have the court address this issue.

¶19 In sum, both parties testified that they were aware of the businesses and chose to deal with the distribution of their interest in them at a later time and without the help of the court. Bradley and Melissa may have been well-advised to identify the businesses in their property settlement agreement and make clear that they would continue to be held and operated jointly. But neither had counsel, and they chose to leave the businesses alone. It was the parties' prerogative to make this agreement, and it is not the role of the court to step in and decide otherwise. The marriage dissolution statutes do not forbid parties from choosing jointly to keep property or operate a business together after the dissolution. When they do so with full knowledge and later disagree about the property's management or disposition, they may have other remedies, but their deliberate decision to omit that property from the disclosures is not ground to reopen the decree. Here, because the parties chose not to include FFM and B&M in their disclosures, the District Court erred by reopening the judgment on that basis.

## CONCLUSION

¶20 The District Court erroneously set aside the final decree of dissolution on the ground of perjury under § 40-4-253(5), MCA, when the parties deliberately agreed to leave their jointly owned businesses undisturbed by the divorce. The court's November 4, 2020 order is reversed.

/S/ BETH BAKER

11

We Concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ DIRK M. SANDEFUR
/S/ JIM RICE